PRESENT: Lemons, Goodwyn, Millette, Mims, McClanahan, and Powell, JJ., and Carrico, S.J.

VIRGINIA COMMONWEALTH UNIVERSITY

                                              OPINION BY
v.    Record No. 110348            JUSTICE LEROY F. MILLETTE, JR.
                                           March 2, 2012
ZHUO CHENG SU

          FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                      Margaret P. Spencer, Judge

     In this case, we must decide whether the circuit court erred by reversing the Virginia Commonwealth University's (VCU) decision denying Zhuo Cheng Su's application for in-state tuition benefits. We hold that it did.

                                  I.

                                  A.

     Su, a native and citizen of the People's Republic of China, came to the United States in 2007 to attend high school in St. Paul, Minnesota. In June 2009, he was accepted by VCU and, shortly thereafter, moved to Midlothian, Virginia, to live with his uncle. In the weeks following his relocation, Su got a part-time job, obtained a Virginia driver's license, and titled and registered his car in Virginia.

     Su matriculated at VCU in August 2009. At the time, he was classified as an out-of-state student for tuition purposes. In May 2010, Su sought to change his classification to in-state status. To that end, he filed an "Application for Change of Domicile for Virginia In-State Tuition Rates" form with VCU's

                                  1

Residency Appeals Officer (Officer).  Su provided some, but not all, of the information requested in the application.  The Officer denied Su's application, and in a letter, explained that Su was "ineligible to receive in-state tuition status" because "[f]ederal law prohibits an F-1 visa holder to establish Virginia domicile."

### B.

Su appealed the Officer's decision to VCU's Residency Appeals Committee (Committee), and an evidentiary hearing was held.  Su began his testimony by clarifying his immigration status; he stated that, although he did not submit the supporting documentation with his application, he became a permanent resident in March 2009 — roughly five months before he matriculated at VCU.  The Committee then proceeded to ask Su a series of questions to fill in gaps in his application.  It first questioned him about when he applied to VCU and whether he applied to other universities as well.  Su said that he applied to VCU in November 2008 and that he also applied to Cornell University, the University of Minnesota, the University of Virginia, and "some small college that [he could not] quite remember."  When the Committee asked Su why he applied to these other universities, he answered that he was "hoping" that one of them would give him a full scholarship and that, had one of

them done so, he would have attended that university instead of VCU.

Next, the Committee questioned Su about his family members and their living situations. He responded that he and his sister live with their uncle in Midlothian year round and that their parents, who are also permanent residents, live with them about "half of [the] year"; they spend "the rest of the year in China," where they have a food business. While his parents own a home in Midlothian, Su said that "they rent it out 12 months out of the year."

The Committee also asked Su how he was paying for his tuition. He replied that, although he does receive "some cash" from his uncle and "[a]bout $1,000 or $2,000" a year from his parents, he pays for most of it himself or with financial aid. Su explained that he works at two Chinese restaurants throughout the year to earn money.

Finally, the Committee questioned Su about where he spent his winter and summer school breaks and whether he intended to stay in Virginia indefinitely. Su said that he spent his winter break at his uncle's home in Midlothian and that he spent half of his three-month summer break in China "for visiting." As for whether he intended to stay in Virginia indefinitely, Su first replied, "So after I graduate, which [I] mean after I graduate from VCU, [I will] probably still stay in

3

this state"; but he later said, "Yes, I am going to stay in Virginia."

The Committee denied Su's appeal, finding that he "did not present clear and convincing evidence to rebut the [statutory] presumption that he is residing in the State primarily for educational purposes." It provided the following reasons for its decision: that Su "[c]ame to the U.S. for purposes of getting an education"; that he "has not totally abandoned China, returns on breaks"; that his "application was incomplete and there were inconsistencies"; that he provided "no documentation to clearly show that he is independent"; and that his "parents still own a business in China."

C.

Su appealed the Committee's decision to the circuit court, which reversed. The circuit court found that the decision was "arbitrary, capricious and contrary to law" because VCU was incorrect in asserting that Su "had no domicile or was domiciled in 'no-state'" and that he was an F-1 visa holder, rather than a permanent resident, when he matriculated. The circuit court further found that "by the overwhelming evidence presented by documents and testimony in the record, [Su] established by clear and convincing evidence that he was domiciled in Virginia and had abandoned any previous domicile for at least one year prior to the date of the entitlement."

4

The circuit court accordingly granted Su "leave to apply for in-state tuition benefits."

We awarded VCU this appeal.

## II.

Before addressing the merits, we think it necessary to discuss the applicable standard of review.  This Court has twice before reviewed a circuit court's judgment on a student's appeal from an in-state tuition eligibility decision by an institution of higher education.  George Mason University v. Floyd, 275 Va. 32, 654 S.E.2d 556 (2008); Ravindranathan v. Virginia Commonwealth University, 258 Va. 269, 519 S.E.2d 618 (1999).  In both cases, we used language in our opinions indicating that we review such a judgment under the highly deferential "plainly wrong" standard.  Floyd, 275 Va. at 39, 654 S.E.2d at 559 ("[W]e hold that the circuit court was plainly wrong in finding that the decision made by GMU was arbitrary, capricious or otherwise contrary to law." (emphasis added)); Ravindranathan, 258 Va. at 275, 519 S.E.2d at 620 ("On appeal, the sole issue that we may consider is whether the circuit court was plainly wrong when it held that the Residency Appeals Committee's decision was not arbitrary, capricious, or otherwise contrary to the law." (emphasis added)).  We now clarify that we apply the de novo standard of review.

When reviewing an in-state tuition eligibility decision by an institution of higher education, a circuit court's sole "function [is] to determine whether the decision reached by the institution could reasonably be said, on the basis of the record, not to be arbitrary, capricious or otherwise contrary to law."  Code § 23-7.4:3(A).  Whether an administrative decision is "arbitrary, capricious or otherwise contrary to law" presents a question not of fact but of law.  We therefore review a circuit court's judgment on a student's appeal from an in-state tuition eligibility decision by an institution of higher education under the de novo — not the "plainly wrong" — standard.  See Dykes v. Friends of the C.C.C. Rd., 283 Va. 306, 308, ___ S.E.2d ___, ___ (2012).

### III.

We now turn to consider whether the circuit court erred by reversing VCU's decision denying Su's application for in-state tuition benefits.

### A.

To be eligible for in-state tuition benefits at a public institution of higher education, a student must "establish by clear and convincing evidence that for a period of at least one year immediately prior to the date of the alleged entitlement [to those benefits], he was domiciled in Virginia and had abandoned any previous domicile, if such existed."  Code § 23-

6

7.4(B). In determining a student's domiciliary intent, an institution of higher education must consider the following applicable factors:

> continuous residence for at least one year prior to the date of alleged entitlement . . . ; state to which income taxes are filed or paid; driver's license; motor vehicle registration; voter registration; employment; property ownership; sources of financial support; military records; a written offer and acceptance of employment following graduation; and any other social or economic relationships with the Commonwealth and other jurisdictions.

Id.

A student will not, however, ordinarily gain "[d]omiciliary status . . . by the performance of acts which are auxiliary to fulfilling educational objectives or are required or routinely performed by temporary residents of the Commonwealth." Id. Indeed, the "[m]ere physical presence or residence primarily for educational purposes shall not confer domiciliary status." Id. Moreover, "[a] matriculating student who has entered an institution and is classified as an out-of-state student shall be required to rebut by clear and convincing evidence the presumption that he is in the Commonwealth for the purpose of attending school and not as a bona fide domiciliary." Id.

A student who is aggrieved by an institution of higher education's "final administrative decision" on his eligibility for in-state tuition benefits has "the right to review in the

7

circuit court for the jurisdiction in which the relevant institution is located."  Code § 23-7.4:3(A).  "In any such action, the institution shall forward the record to the court, whose function shall be only to determine whether the decision reached by the institution could reasonably be said, on the basis of the record, not to be arbitrary, capricious or otherwise contrary to law."  Id.

## B.

After reviewing the administrative record, we conclude that VCU's decision denying Su's application for in-state tuition benefits cannot "reasonably be said . . . to be arbitrary, capricious or otherwise contrary to law."  Id.  A decision is "arbitrary and capricious," we have said, when it is " 'willful and unreasonable' " and taken " 'without consideration or in disregard of facts or law or without determining principle.' "  School Bd. of the City of Norfolk v. Wescott, 254 Va. 218, 224, 492 S.E.2d 146, 150 (1997) (quoting Black's Law Dictionary 105 (6th ed. 1990)).  Here, the record reflects that VCU gave careful consideration to the facts of Su's case and that it applied the proper principles.

As a student who was classified as out of state when he matriculated at VCU, Su bore a heavy burden to establish his eligibility for in-state tuition benefits:  He had to "rebut by clear and convincing evidence the presumption that he is in the

8

Commonwealth for the purpose of attending school and not as a bona fide domiciliary." Code § 23-7.4(B). There is more than sufficient evidence in the record to support VCU's conclusion that Su did not meet this burden. Significantly, he applied to several universities outside of Virginia and moved to Virginia only after being accepted by VCU. He also gave inconsistent answers when asked whether he intended to stay in Virginia indefinitely. Additionally, he returned to his native country of China for more than a month during the year in which he was supposedly establishing his Virginia domicile.

Further, many of the facts Su relies on "to support his purported Virginia domicile could likewise be deemed auxiliary to fulfilling his educational objectives." Floyd, 275 Va. at 39-40, 654 S.E.2d at 559; see also Code § 23-7.4(B). For example, titling and registering a car, obtaining a driver's license, and securing part-time employment are all actions that "are required or routinely performed by temporary residents of this Commonwealth." Code § 23-7.4(B); see also Ravindranathan, 258 Va. at 274-75, 519 S.E.2d at 620-21.

### C.

In reversing VCU's decision denying Su's application for in-state tuition benefits, the circuit court erred. First, it reviewed the wrong decision. Under Code § 23-7.4:3(A), a circuit court is to review an institution of higher education's

9

"final administrative decision," not its "initial determination." Instead of reviewing the Committee's "final administrative decision," which was based on several valid grounds, the circuit court here reviewed the Officer's "initial determination," which was based on one erroneous ground: that Su held an F-1 visa when he matriculated at VCU. Since the Committee did not rely on the Officer's decision in denying Su's application, that decision should not have been a factor in the circuit court's review.

Second, the circuit court did not limit its review to the administrative record. According to Code § 23-7.4:3(A), a circuit court's review of an institution of higher education's decision on a student's eligibility for in-state tuition benefits is to be based solely on the record forwarded by the institution. Here, the circuit court went beyond the record it was forwarded in reviewing VCU's decision denying Su's application for in-state tuition benefits. For instance, the circuit court states in its order that

> [Su] testified that he would not have gone to an out-of-state school if he had been accepted so that he could be close and help his newly immigrated family, but applied to out-of-state schools to see if his academic record was strong enough to get into competitive schools. He states that it was common procedure for high school students to apply to in and out of state colleges, but his parents wanted him to attend school in Virginia.

These statements, however, appear nowhere in the record that was forwarded to the circuit court and therefore should have played no part in its review.

Third, the circuit court did not adhere to the applicable standard of review. As noted earlier, when reviewing an in-state tuition eligibility decision by an institution of higher education under Code § 23-7.4:3(A), a circuit court's only "function [is] to determine whether the decision reached by the institution could reasonably be said, on the basis of the record, not to be arbitrary, capricious or otherwise contrary to law." The circuit court, however, did not so limit its review in this case. Rather, it reweighed the evidence and found that Su "established by clear and convincing evidence that he was domiciled in Virginia and had abandoned any previous domicile for at least one year prior to the date of the entitlement." It was not for the circuit court to substitute its judgment for that of VCU.

IV.

Because it cannot be reasonably said on the administrative record that VCU's decision denying Su's application for in-state tuition benefits was arbitrary, capricious, or otherwise contrary to law, we reverse the circuit court's judgment and enter final judgment for VCU.

<u>Reversed and final judgment.</u>

11